[877 NYS2d 109]

In the Matter of PETER FRANCIS MARTIN, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND, ELEVENTH AND THIRTEENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, March 31, 2009

## APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Myron C. Martynetz* of counsel), for petitioner.

*Jerome Karp, P.C.*, Brooklyn, for respondent.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (hereinafter the Grievance Committee) served the respondent with a petition dated September 27, 2007, which contains six charges of professional misconduct. After a hearing on December 12, 2007, Special Referee James A. Gowan sustained only part of charge six and failed to find any violations of the disciplinary rules with respect to the remaining charges. The Grievance Committee now moves to disaffirm the Special Referee's finding to the extent that he failed to sustain charges one, two, three, four, and five and parts of charge six and to confirm solely to the extent that he sustained part of charge six. The respondent's counsel has submitted an affirmation in opposition to the Grievance Committee's application to disaffirm the Special Referee's report and in support of his request that the Court confirm the Special Referee's report in its entirety and impose such discipline as the Court deems just and proper.

Charge one alleges that the respondent provided inaccurate and misleading information to the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (4), (5) and (7) (22 NYCRR 1200.3 [a] [4], [5], [7]).

The respondent maintained an attorney trust account (hereinafter IOLA) at J.P. Morgan Chase Bank (hereinafter Chase) which contained funds entrusted to him as a fiduciary incident to his practice of law. Pursuant to the dishonored check reporting rules for attorney special, trust and escrow accounts (22

NYCRR part 1300), the Lawyers' Fund for Client Protection forwarded to the Grievance Committee and the respondent a bank report showing that three checks in the amounts of $7,285.47, $596, and $505.53, were presented for payment on March 29, 2006 against insufficient or uncollected funds.

By letter dated May 4, 2006, the respondent forwarded to the Grievance Committee a letter from Chase dated May 3, 2006, which advised that due to an error in processing a deposit into the respondent's IOLA account, the deposit was not properly credited and an apparent insufficiency resulted on March 29, 2006. The deposit has since been corrected and the items presented were paid. At that time, the respondent knew that the alleged bank error referred to in the Chase letter was not the reason for the insufficiency in his IOLA account.

Charge two alleges that the respondent provided inaccurate and misleading information to the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (4), (5) and (7) (22 NYCRR 1200.3 [a] [4], [5], [7]).

On March 29, 2006, a $10,000 deposit was made to the respondent's IOLA account. The ending daily balance in the respondent's IOLA on March 29, 2006 was $1,334.27. By letter dated June 28, 2006, the respondent advised the Grievance Committee that the $10,000 on deposit on March 29, 2006 was for his client Sciannantena and remained on deposit. He further advised that the three checks referred to in charge one, which totaled $8,387, were issued on March 29, 2006 to pay settlement charges for the Djadowicz borrowers from funds received on March 17, 2006 totaling $138,500. According to the respondent, the ending balance of $1,334.27 in his IOLA as of March 29, 2006 belonged to client LoDispoto and remained on account.

However, a portion of the three checks totaling $8,387 issued for the benefit of Djadowicz cleared against the $10,000 deposited for Sciannantena on March 29, 2006 thereby depleting that deposit.

The respondent knew or should have known that the IOLA account contained at least $10,000 earmarked for Sciannantena on March 29, 2006, while the ending balance in the IOLA on that date was only $1,334.27. Further, the respondent knew or should have known that the $1,334.27 in the IOLA on March 29, 2006 was not earmarked for LoDispoto but could have been attributed to any one of numerous clients for whom the respondent should have been holding funds in escrow. He knew or should have known that he should have been holding more than $1,334.27 in his IOLA account for LoDispoto on March 29, 2006.

Charge three alleges that the respondent misappropriated funds held in his IOLA which were entrusted to him as a fiduciary incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

In or about 2002 the respondent opened an interest-bearing escrow account with Chase entitled Chase Escrow and Client Fund Management Account (hereinafter CFMA) for the deposit of clients' funds which would be held for substantial periods of time prior to a real estate closing. On or about August 13, 2002, he deposited the sum of $60,000 into the CFMA for the Scotaliano to Zhaou real estate transaction. On or about February 10, 2004, he paid $60,000 from his IOLA account, rather than the CFMA, with respect to that transaction. The IOLA account did not contain funds earmarked for that transaction. Consequently, the respondent invaded other clients' funds when he paid that sum from his IOLA.

Charge four alleges that the respondent misappropriated funds held in his IOLA which were entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

On or about November 6, 2002, the respondent deposited the sum of $40,000 into the CFMA for the Weschler real estate transaction. On or about April 2, 2003, he paid out $40,000 from his IOLA, rather than the CFMA, with respect to that transaction. The IOLA did not contain funds earmarked for that transaction. Consequently, the respondent invaded other clients' funds when he paid that sum from his IOLA.

Charge five alleges that the respondent misappropriated funds held in his IOLA account that had been entrusted to him as a fiduciary, incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

On or about August 13, 2002, the respondent deposited $75,000 into the CFMA for the Scotaliano to Lin real estate transaction. On or about March 4, 2004, he paid out the sum of $75,000 from his IOLA, rather than the CFMA, with respect to that transaction. The IOLA did not contain funds earmarked for that transaction. Consequently, the respondent invaded other clients' funds when he paid that sum from his IOLA.

Charge six alleges that the respondent failed to maintain required bookkeeping records for his attorney escrow accounts,

in violation of Code of Professional Responsibility DR 9-102 (d) (1), (2) and (9) (22 NYCRR 1200.46 [d] [1], [2], [9]).

Between August 13, 2002 and March 29, 2006, the respondent failed to maintain the records of all deposits in and withdrawals from his attorney escrow accounts, showing the date, source, and description of each item deposited, as well as the date, payee, and purpose of each withdrawal or disbursement. The respondent failed to maintain a ledger book or similar record for his attorney escrow accounts, showing the source of all funds deposited in those accounts, the names of all persons for whom the funds are or were held, the amount of such funds, the description and amounts, and the names of all persons to whom such funds were disbursed. The respondent failed to make accurate and contemporaneous entries of all financial transactions in his records, in his special accounts, in his ledger books, and in his books of account kept in the regular course of his practice.

Based on the evidence adduced, including the respondent's admissions with respect to the underlying factual allegations, charges one through five should have been sustained in their entirety and charge six should have been sustained with respect to the violations of Code of Professional Responsibility DR 9-102 (d) (1), (2) and (9) (22 NYCRR 1200.46 [d] [1], [2], [9]). Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee to the extent that he sustained the part of charge six that alleged a violation of Code of Professional Responsibility DR 9-102 (d) (9) (22 NYCRR 1200.46 [d] [9]) and to disaffirm the Special Referee's report to the extent that he failed to sustain charges one through five in their entirety and those parts of charge six as alleged violations of Code of Professional Responsibility DR 9-102 (d) (1) and (2) (22 NYCRR 1200.3 [d] [1], [2]) is granted.

In determining an appropriate measure of discipline to impose, the respondent presents himself as an inherently honest individual, devoted to his clients, in possession of a sense of fair dealing, and one who has never caused a client or third party to lose any money. He contends that this matter does not warrant a public sanction, and requests that the matter be referred back to the Grievance Committee for the imposition of an admonition.

The Grievance Committee points out that the respondent received an admonition in 1990 for arranging a loan between his mutual friends without procuring title insurance or re-

cording the mortgage securing the loan. The respondent's commencement of a foreclosure action was rendered futile because he failed to have the mortgage recorded. He was admonished for failing to protect his client's interests and for creating an appearance of impropriety due to his relationship with the parties.

The Grievance Committee contends that the Special Referee improperly used mitigating factors as affirmative defenses, misinterpreted the meaning of "misappropriation" in the context of professional misconduct, and has otherwise crafted "a result-oriented decision based not on facts and admissions, but on a favorable outcome for respondent."

By way of mitigation, the respondent points out, through his character evidence, that he enjoys an enviable reputation among builders, banks, lenders, brokers, and attorneys. He is on the approved attorney list for more than 35 lending institutions throughout the United States.

The respondent submits that the mistaken deposits were caused by confusion without any intent to deprive. He maintains that he was scrupulous with his calculations and was completely faithful to the inviolability of escrow funds, aside from the mistaken deposits. During the course of his testimony, the respondent averred that he is meticulous in preparing his closing statements, which are prepared simultaneously with the closing itself. He contended that figures are double checked and each separate transaction is reconciled. The respondent maintains that all of his transactions closed without incident and there was never any dispute as to his calculations. According to the respondent, his continued representation of financial institutions is a testament to his integrity and scrupulousness. He deems it ironic that his difficulties with the Grievance Committee emanate from his desire to benefit others by opening an interest-bearing account which has since been abandoned.

Under the severe stress of this matter and without any knowledge of how the shortfall might have occurred, the respondent admittedly "communicated inaccurately" with the Grievance Committee. He quickly came to realize his error, corrected his inaccuracies, and was thereafter completely candid with the Grievance Committee.

The respondent has undertaken corrective measures to avoid a repetition of the underlying events. These include modernizing his bookkeeping system, utilizing QuickBooks software, and hiring a paralegal who is thoroughly familiar with the system. The respondent now continually reconciles his accounts

and maintains a separate ledger for his IOLA accounts. He also employs an accountant who does a quarterly review.

The respondent testified that he has never failed to place client funds in an escrow account, has never issued a check from any escrow account against uncollected funds, has never retained interest in any escrow account for his personal use, and has never misappropriated or converted client funds for his own use. He terms this experience "a terrible wake up call."

Notwithstanding the substantial mitigating circumstances, the record contains clear admissions of professional misconduct. Moreover, prior to the entry into this case of Mr. Karp as the respondent's counsel, the respondent was less than forthright with the Grievance Committee. While the respondent attributes his behavior to panic and extreme stress, he nevertheless made clear misrepresentations to the Grievance Committee. Under the totality of circumstances, the respondent is suspended from the practice of law for a period of one year.

PRUDENTI, P.J., MASTRO, RIVERA, SPOLZINO and ANGIOLILLO, JJ., concur.

Ordered that the Grievance Committee's motion to confirm in part and disaffirm in part the Special Referee's report is granted to the extent that charges one through five are sustained in their entirety and charge six is sustained with respect to the violations of Code of Professional Responsibility DR 9-102 (d) (1), (2) and (9) (22 NYCRR 1200.46 [d] [1], [2], [9]) and the motion is otherwise denied; and it is further,

Ordered that the respondent, Peter Francis Martin, is suspended from the practice of law for a period of one year, commencing May 1, 2009, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the one-year period upon furnishing satisfactory proof that during the said period he (a) refrained from practicing or attempting to practice law, (b) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), (c) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (3), and (d) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Peter Francis Martin, shall desist and refrain from

(1) practicing law in any form, either as principal, agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Peter Francis Martin, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).